**WOOLEYHAN TRANSPORT CO. et al.**

**v.**

**HIGHWAY TRUCK DRIVERS AND HELPERS LOCAL NO. 107**

**and**

**Motor Transport Labor Relations, Inc.**

**Civ. A. Nos. 38406, 38427.**

United States District Court
E. D. Pennsylvania.

July 12, 1965.

John F. E. Hippel, Robert W. Lees, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for plaintiff.

Marshall J. Seidman, Seidman & Rome, Philadelphia, Pa., for Highway Truck Drivers and Helpers Local No. 107.

Hugh J. Beins, Washington, D. C., for International Brotherhood of Teamsters.

James J. Leyden and John W. Pelino, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for Motor Transport Labor Relations, Inc.

GRIM, District Judge.

## FINDINGS OF FACT

1. Plaintiffs, Wooleyhan Transport Co., Morrell-Felin Co., Penn Packing Co., Fox Warehousing Co., Fox Transport System, Milton K. Morris, Inc., Lombard Bros., Inc., and Norwalk Truck Lines, Inc., are certified motor carriers engaged in transporting freight and merchandise in interstate commerce and operating terminals in Philadelphia, Pennsylvania.

2. Defendant, Highway Truck Drivers and Helpers Local No. 107 (hereinafter referred to as Local No. 107), an unincorporated association, is a labor organization representing employees in an industry affecting commerce. It is affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers (hereinafter referred to as the "International"). Local No. 107 has an office at 105 Spring Garden Street, Philadelphia, Pennsylvania. It is composed of persons too numerous to be included herein.

3. Defendant, Motor Transport Labor Relations, Inc. (hereinafter referred to as "MTLR") is a non-profit corporation existing under the laws of the Commonwealth of Pennsylvania with its office at 421 North New Market Street, Philadelphia, Pennsylvania.

4. Intervenor, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America and its National Over-The-Road and City Cartage Policy and Negotiating Committee, is an unincorporated association, commonly known as an international labor organization, with its main office and principal place of business in Detroit, Michigan and is a party to the collective bargaining agreement hereinafter mentioned.

5. MTLR exists for the purpose of representing employers in labor relations matters and Wooleyhan, Morrell-Felin, Penn Packing, Fox Warehousing, Fox Transport, Morris, Lombard and Norwalk have been members of MTLR for many years.

6. Effective September 1, 1964 MTLR acting for and on behalf of its members including Wooleyhan, Morrell-Felin, Penn Packing, Fox Warehousing, Fox Transport, Morris, Lombard and Norwalk entered into a collective bargaining agreement with Local No. 107 and the International Brotherhood of Teamsters by its National Over-The-Road Committee for

an initial term extending to March 31, 1967.

7. Article 43, Section 1 of the aforesaid agreement provides as follows:

> The Union and the Employers agree that there shall be no strike, lockout, tie-up or *legal proceedings* without first using all possible means of a settlement as provided for in this Agreement, or any controversy which might arise.

Plaintiffs have not exhausted all possible means of settlement provided in the labor agreement before instituting this legal proceeding.

8. Article 43, Section 7(a) of the aforesaid agreement provides in part as follows:

> While the Union shall undertake every reasonable means to induce such employees to return to their jobs during any such period of unauthorized stoppage of work mentioned above, it is specifically understood and agreed that the Employer during the first twenty-four (24) hour period of such authorized work stoppage shall have the sole and complete right of reasonable discipline short of discharge and such Union members shall not be entitled to or have any recourse to any other provisions of this Agreement. After the first twenty-four (24) hour period of such stoppage and if such stoppage continues, however, the Employer shall have the sole and complete right to immediately discharge any Union member participating in any unauthorized strike, slowdown, walkout, or any other cessation of work and such Union members shall not be entitled to or have any recourse to any other provision of this Agreement.

9. Article 43, Section 4, Clause (f) of the labor agreement between the parties provides as follows:

> It is agreed that all matters pertaining to the interpretation of any provision of this agreement shall be referred by either party to the Joint Area Committee for settlement. At the request of the Employer or Union representative, the Joint Area Committee shall be convened on seventy-two (72) hours notice to handle matters so referred.

Plaintiffs have made no such referral.

10. Starting at midnight on Sunday, June 20, 1965 Local No. 107 acting through its officers, business agents, and members called an unauthorized work stoppage in all of the cartage, food, and other companies under contract with it in the City of Philadelphia. Thereafter, the Court of Common Pleas of Philadelphia County as of approximately 11 A. M. on Monday morning, June 21, issued a temporary restraining order enjoining such work stoppage.

11. At 9 P.M. on June 21, 1965, Michael Hession, Secretary-Treasurer of Local No. 107, called a meeting of the membership of Local No. 107. The meeting was held at the Philadelphia Athletic Club, Broad Street above Vine, Philadelphia.

12. At that meeting Michael Hession advised the membership of the temporary restraining order entered by the Court of Common Pleas and told all of the members that if the work stoppage continued, Local No. 107 and its members would be in violation of the injunction and ordered the members to return to work.

13. Despite the advice and order of Michael Hession, certain of the membership refused to discontinue the work stoppage until June 25, 1965 when food drivers commenced operations and until June 26, 1965 when the freight and fuel drivers, as a result of a meeting held in Convention Hall, Philadelphia, Pennsylvania, acceded to Mr. Hession's order that they return to work.

14. On or about June 28, 1965 employees Cullen, O'Donnell, Rutherford, Gile, Wible, Chalmers, Falls, Merkel, Lowe, Horning, Airgood, McCusker, Kaulska, Hellmeith and Testemo, who were employed by the above named employers, were advised by their respective

employers that they had been discharged for alleged participation in the above work stoppage which they deny or avoid by explanation.

15. Local 107, on behalf of the said discharged employees, filed grievances challenging the validity of the discharges pursuant to Articles 43 and 44 of the collective bargaining agreement.

16. Pursuant to the said provisions of the agreement, hearings on the said grievances were scheduled to be held on July 2 and July 6, 1965.

17. The employers on July 1, 1965 obtained a temporary restraining order without hearing upon affidavits enjoining such hearings until further order of this Court.

18. A hearing was held on July 6, 1965 at which all parties appeared by counsel, were afforded an opportunity to present testimony and to make argument. At the conclusion of the hearing counsel for Local 107 moved that the Court dissolve the temporary restraining order previously issued and deny the motion of the Plaintiffs for a preliminary injunction.

19. At the hearing held on July 6, 1965, counsel for Local No. 107 and the International stipulated that if the Plaintiffs should fail to sign at any stage of the projected grievance procedure, a binding submission agreement similar to Exhibits P–3 and P–4 introduced into evidence at the hearing, the Unions would not assert whatever right to strike they had under Sections 3(c), 4(d), 6(b) and Section 1 of Article 43.

20. The Court finds that if the Plaintiffs are compelled to participate in the grievance procedure with respect to the discharge of their said employees they will not suffer immediate and irreparable harm.

21. The Court finds that the provisions of the contract with reference to discharge grievances appear to be conflicting. It further appears at this stage of the proceedings that there is some doubt as to whether the provisions of the contract specifically and clearly exclude the subject of discharges from the grievance procedure.

22. A factual issue for determination in this dispute is presented as to the participation of each of the discharged employees in the unauthorized work stoppage. The Court finds that at this stage of the proceedings it does not clearly appear from the provisions of the collective bargaining agreement that this factual issue is to be determined by the Court rather than by the committees and arbitrator established under the grievance procedure sections of the collective bargaining agreement.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction pursuant to the provisions of Section 301 of the National Labor Relations Act, as amended, 29 U.S.C. § 185(a).

2. The temporary restraining order which issued on July 1, 1965 was improvidently granted on the basis of the complaint with affidavit attached without the Court then having the benefit of a hearing in which testimony was presented and argument had.

3. After a hearing in which testimony was presented and argument heard, the Court concludes that the Plaintiffs have failed to make out a case at this stage of the proceedings, that the discharges in question here are specifically and clearly excluded from the grievance procedures established by the collective bargaining agreement and that the Plaintiffs would suffer immediate and irreparable harm if required to participate in the grievance process established by the labor agreement to which they all were signatories.